Case 3:04-cv-01265-JAH-RBB   Document 1   Filed 06/21/04   PageID.1   Page 1 of 20

USDC SCAN INDEX SHEET










GEP   6/23/04   11:19

3:04-CV-01265   SD PARKING V. VIEJAS BAND

*1*

*CMP.*

1  THE LAW OFFICES OF CHARLES D. NACHAND
   Charles D. Nachand (Bar No. 72068)
2  Judy G. Keim (Bar No. 144855)
   447 South Escondido Boulevard
3  Escondido, California 92025
   (760) 741-2665; (760) 741-0396 (Facsimile)
4
5  Attorneys for Plaintiffs SAN DIEGO PARKING AND VALET SERVICES, ANTHONY
   CARCHEDI



## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO PARKING AND VALET SERVICES, a Delaware LLC; and ANTHONY CARCHEDI,<br><br>Plaintiffs,<br><br>v.<br><br>VIEJAS BAND OF KUMEYAAY INDIANS; VIEJAS CASINO MANAGEMENT; and VIEJAS TRIBAL GAMING COMMISSION; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: '04 CV 1265 - JAH (RBB)<br><br>COMPLAINT FOR :<br>1. INTENTIONAL VIOLATION OF THE IGRA AND THE STATE COMPACT BY REFUSING TO PROVIDE OR APPLY "DUE PROCESS" TO CLAIMS AND PRESENTS A DANGER TO THE PUBLIC;<br>2. LIBEL AND SLANDER;<br>3. TRADE LIBEL;<br>4. INTERFERENCE WITH CONTRACT;<br>5. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>6. CONSPIRACY TO HARM PLAINTIFFS IN THEIR BUSINESS AND REPUTATION;<br>7. VIOLATION OF CIVIL RIGHTS AND DUE PROCESS<br><br>(Jury Demanded) |

Plaintiffs, SAN DIEGO PARKING AND VALET SERVICES ("SDPVS") and ANTHONY CARCHEDI ("CARCHEDI") (jointly referred to as "Plaintiffs") for their Complaint against the VIEJAS BAND OF KUMEYAAY INDIANS ("VIEJAS TRIBE"), including as part thereof VIEJAS CASINO MANAGEMENT ("CASINO MANAGEMENT") and VIEJAS TRIBAL GOVERNMENT GAMING COMMISSION ("GAMING COMMISSION") (hereinafter

collectively "defendants VIEJAS") demand and request a jury trial on the monetary/damage claims set forth herein.

Plaintiffs allege as follows:

## I. JURISDICTION

1. This Court has jurisdiction of the matter pursuant to the provisions of the Indian Gaming Regulatory Act (U.S.C. Title 25, Chapter 29 (hereinafter "IGRA") and the provisions thereof under which VIEJAS has engaged in Class III gaming (gambling) and organized and operated a Class III gaming operation (casino) within the Southern District of California. The defendants VIEJAS have made use of the United States Mail and other instruments of communication and interstate commerce in connection with the transactions, acts, practices and/or courses of business as alleged in this Complaint. Plaintiff SDPVS is a Delaware LLC. Plaintiff CARCHEDI is a resident of San Diego County, California and VIEJAS claims its existence independent and apart from the State of California and the State of Delaware, creating diversity jurisdiction. The issues and matters in question relating to damages exceed $50,000.

## II. SUMMARY OF THE ACT

2. VIEJAS operates a casino for the purposes of conducting gambling operations (including, but not limited to slot machines, video poker machines, poker, blackjack and other card games) pursuant to a "State-State Gaming Compact" which is an agreement reached with the State of California to allow that gambling (hereinafter "COMPACT"). Without the specific provisions of the IGRA and its terms, which specifically mandate and require that a State COMPACT be negotiated and entered into, VIEJAS cannot legally provide its gambling/casino.

3. The IGRA and the COMPACT require minimum protections for the public in the conduct of all aspects of the gambling/casino operations.

4. Pursuant to said standards, "due process" is required. The VIEJAS Tribal Ordinance, as adopted by VIEJAS, specifically provides there will be the minimum "due process" requirements in said ordinance and its application to the public. The same

2

Complaint

includes and is applied to not only the gambling public and gaming consumers, but to all of those who are in any way, directly or indirectly, including tangentially, involved in the gambling and casino operations. The same include Plaintiffs.

5.  Pursuant to the IGRA, and its terms (which include the adoptive agreements, laws, rules and regulations promulgated thereunder including, but not limited to the State COMPACT and Tribal ordinances and regulations), VIEJAS is required to have an independent GAMING COMMISSION charged with oversight, review, licensing and enforcement of the rules and regulations, including "due process," at VIEJAS. The same specifically includes the gambling casino operations and all of the premises upon which the same is conducted.

6.  The GAMING COMMISSION is required to act independently of the casino operation for the protection of the public. It is required to interview, investigate and determine qualifications and suitability for the licensing of persons and entities employed directly or indirectly in connection with the gambling casino operations. These include not only suppliers and purveyors of slot machines, poker machines and artifacts of gambling, but such things as food providers, providers of parking and valet services, traffic control, security on the grounds, etc.

7.  The GAMING COMMISSION, CASINO MANAGEMENT and VIEJAS TRIBE, during and as part of the pre-existing, continuing and on-going business practices, hold themselves out as separate and independent entities. CASINO MANAGEMENT enters into contracts for gaming operations and related activities onsite. The GAMING COMMISSION acts as a separate, independent, unfettered "enforcement" entity. The VIEJAS TRIBE contends and maintains that it cannot and does not interfere with GAMING COMMISSION activities and actions.

8.  However, when it suits them and when defending allegations against it, the VIEJAS TRIBE, through its authorized representatives, specifically, in writing, after illegal and improper actions and activities, contends that they are one in the same and fully

///

1 protected by claims of immunity without the right of oversight, review or determination by any third-party entitiy or court, including this Court.

9. VIEJAS has adopted tribal ordinances, which require "due process" and relegates the implementation of "due process" to its regulations. The regulations as adopted specifically do NOT call for, implement, or provide for "due process." The regulations are promulgated by the Commissioner and adopted by Tribal procedures. The regulations do provide for sanctions, penalties, actions and losses of licenses and other rights on the casino/gambling premises. The regulations do not provide for "notice" and do not provide for fair hearings. The Commissioner has specifically interpreted the same in writing and acknowledged the lack of notice and interpreted the same as not requiring said hearings. The regulations specifically do not provide for "due process" when dealing with others (non-tribe).

10. By virtue of the regulations and by actual conduct and participation, VIEJAS engages in selective, unilateral, improper, unlawful, unfair, arbitrary, inequitable and capricious enforcement.

11. VIEJAS does not enforce or apply its own ordinance to its conduct, the conduct of the Commission or its members and selectively applies the same solely for its own benefit. The regulations, as adopted, do NOT follow the ordinance and the ordinance is incomplete on its face, specifying that completion is to be in the form of the regulations.

12. By this Complaint, Plaintiffs seek the entry of the judgment for damages for violation of Plaintiffs' civil rights, interference with contract, damages for libel/slander, interference with prospective economic advantage, trade libel, and breach of contract. Further, Plaintiffs request that this Court, on behalf of the general public including, but not limited to those engaging in agreements in providing services and materials to VIEJAS, as well as those gambling and consuming on the premises, be protected as established by the IGRA and that the Court declare and Order that VIEJAS is in violation of the IGRA, presents a danger to the public, and order a cease and desist of their Class III gaming activities (gambling).

### 3. Allegations Common To All Claims

13. Without the provisions of the IGRA and the State COMPACT, VIEJAS has no right or authority to conduct Class III gaming, the same would be illegal, improper and disallowed.

14. VIEJAS holds itself out as a public gaming facility and utilizes public radio and television, as well as other general, public forms of promotion and advertising.

15. VIEJAS holds itself out as a public location available to all, suggesting that while "in San Diego" persons should come visit, utilize the facilities, etc. There is no notice, information, disclosure, suggestion or indication that they claim not to be subject to minimum forms of "due process," equal protection and general protections expected by persons dealing with VIEJAS or gambling at the casino. There is no disclosure that VIEJAS claims to be self-regulated and outside the law.

16. SDPVS, through CARCHEDI, was hired to and contracted with the CASINO MANAGEMENT to run valet parking at the casino.

17. The GAMING COMMISSION investigated and licensed CARCHEDI and SDPVS.

18. The casino requested several other services from CARCHEDI, including traffic control, golf carts, VIP services, etc. Plaintiffs repeatedly requested and sought written agreements for said services. VIEJAS refused to utilize documents suggested or prepared by Plaintiffs, but demanded and utilized the services provided by Plaintiffs and did not provide the written contracts for other services. This went on for multiple months into years.

19. In early 2003, a previous casino employee, then an employee of SDPVS, was being investigated for improper conduct, potential wrongdoing and substance abuse. Plaintiffs believe that the employee became aware of the investigation being conducted at the joint request for CASINO MANAGEMENT and SDPVS. The employee made allegations of over-billing to the COMMISSION, but not to CASINO MANAGEMENT or SDPVS.

20. The GAMING COMMISSION then undertook an "investigation." The following events and proceedings were as follows:

1     (A) The GAMING COMMISSION investigator seized papers, documents and records in violation of the Tribal Ordinance, which provides that it may seize hard equipment, but specifies that documents and records may only be accessed, inspected and copied, not providing for seizure thereof;

    (B) The GAMING COMMISSION refused to return the documents, or to provide copies of the documents to Plaintiffs;

    (C) The GAMING COMMISSION provided no notice of the claims or charges against Plaintiffs and, further instructed all those with whom they spoke and had contact, not to discuss the matter with Plaintiffs, their employer, at all including, inquiries, statements, comments or information. The GAMING COMMISSION despite multiple requests, verbally and in writing, has never identified any ordinance or legal basis for said instructions and threats of retaliatory action in the event of violation;

    (D) The GAMING COMMISSION, which employs four (4) onsite auditors, brought in an SDPVS management employee and one of the auditors (former IRS criminal investigative auditor) and reviewed the seized records. The GAMING COMMISSION representative (investigator), who had no audit experience of any kind, nor any qualification to provide such audit, was advised along with the SDPVS management employee by the auditor after an initial review that, the billing records appeared to be somewhat disorganized or "sloppy," but that there did not appear to be any significant impropriety and whatever inaccuracies existed, appeared to "wash" with no "net" over-billing or under-billing;

    (E) The GAMING COMMISSION removed the auditor from the case, did not seek his further assistance, and assigned the matter to the investigator;

    (F) The investigator created a "audit" - identifying ONLY those items that supported his claim and disregarding and not including or balancing any other entries, including but not limited to those that were corrections, offsets or set offs, and on the same page or pages from which he obtained his supporting data. Further, the investigator used techniques involving interrogation of witnesses, causing them to be frightened and afraid, making them refuse to talk to their own employer and, in some cases, actually causing

Complaint

1  CASINO MANAGEMENT such fear, embarrassment and humiliation that they contacted their superiors and advised the GAMING COMMISSION of the tactics and techniques. That resulted in apologies (but no cessation) from the Commissioner;

(G) Plaintiffs advised the Commissioner and investigator that based on the documents that they had taken, the little information they had gleaned, and if they were conducting a proper audit, they needed additional data and information. The Commissioner and investigator declined the same. The Commissioner then refused to license Plaintiffs, advised that they would be required to leave the Casino premises, and would not be allowed to work there, fulfill their contract or otherwise. The Commissioner advised in writing that the conduct of Plaintiffs was fraudulent, criminal, etc.;

(H) No hearing or proceeding of any kind occurred prior to the Commissioner issuing his findings. There was only interrogation of the various persons without notice to Plaintiffs herein. There was no notice of the charges or claims, other than what was gleaned through the various questions asked and documents taken, and none of the results or information was provided to Plaintiffs at any time prior to their summary dismissal and accusatory letter;

(I) The termination letter with the criminal accusations against Plaintiffs was distributed by the GAMING COMMISSION, in direct violation of the Tribal Ordinance, to multiple persons who did not need to know the content thereof;

(J) Plaintiffs appealed, demanded any documents demonstrating notice, demanding the appropriate hearing, demanding to be provided alternative approach, as this appeared to be strictly a contract issue, noted the lack of "due process" and demanded copies of the results of the investigation and interrogations to prepare for the appellate process or if the hearing was granted;

(K) The GAMING COMMISSION advised - in writing:

(1) That there was no COMMISSION per se, but only the Commissioner;

///

    (2)  That the Commissioner had done the investigation and was not going to provide any hearing as it would be redundant (since he had already made up his mind);

    (3)  The Commissioner acknowledged that no such Notice had been provided;

    (4)  The Plaintiffs were advised that the claims and charges were those set forth in the June 20, 2003, termination and accusation letter, that a copy of the Summary Report by the investigator, including his "audit" would be provided and nothing else;

    (5)  Plaintiffs were advised that the documents would not be returned, nor would copies be available until after the appeal proceeding.

  (L)  Plaintiffs again identified the lack of "due process" and requested additional time (more than the 15-days allowed) to prepare. Such request was denied;

  (M)  There was a Review Board convened through the Commissioner's office to conduct an appellate review at which time, Plaintiffs' appeal was to be heard;

  (N)  At the Review Board proceedings, the Commissioner acted as prosecutor and both opened the proceedings, identified the claims, which did not match up with those presented in the June 20th accusation and termination letter, acted as presenter, evidence provider and prosecutor, and determined the order of proceedings, the order of evidence and witnesses, and provided the approach;

  (O)  Although it was Plaintiffs' appeal and it was indicated that they had the burden of proof, the Commissioner, acting as prosecutor, went first and last and as noted, dictated what the claims were, presented evidence thereon rather than Plaintiffs, as appellants, identifying the claims as made in the accusation/termination letter and having the opportunity to demonstrate the lack of evidence in support thereof;

  (P)  At the conclusion of the proceedings, the Commissioner apologized to Plaintiffs for the claims and accusations made in the letter, acknowledging there was no support and no accuracy to the majority of the claims made therein, and essentially

8

Complaint

1 contended that Plaintiffs had engaged in sloppy billing practices, and contended that
2 Plaintiffs had wrongfully interfered in the investigation. The Commissioner continued to
3 refuse to identify any basis other than his claim of inherent power to order or control
4 witnesses and prevent them from speaking to the accused, who was their employer;

5       (Q)    It is undisputed that the evidence presented demonstrated that in fact
6 the Casino had been under-billed and the Casino subsequently paid additional funds to the
7 Plaintiffs;

8       (R)    It was undisputed that not only does the Casino have multiple contracts
9 and regular issues in its general business dealings, including frequent conduct of "sloppy,"
10 inadequate or improper billing, but that the multiple (in excess of ten) food providers to the
11 Casino operations were so consistently erroneous, egregious and constant in their over-
12 billing, that the Casino, with the <u>approval</u> of <u>the Commissioner</u>, actually hired a full-time
13 separate person/entity to review and correct every month the food service bills. Moreover,
14 the testimony provided was that every month the Casino was happy to report that the
15 independent reviewer caught <u>over-billings</u> of each of the providers, <u>every</u> <u>month</u>. It was also
16 noted that there was no investigation, no action, and no intended action against these food
17 providers by the GAMING COMMISSION;

18       (S)    The "Appellate Board" closed its proceedings and indicated it would
19 retire to review their evidence and provide a fax response to both the GAMING
20 COMMISSION and Plaintiffs within two to three days. The next day, because of a request
21 by CASINO MANAGEMENT for the assistance of Plaintiffs, regardless of the outcome and
22 the need to have Plaintiffs maintain their presence onsite to assist in the transition if it were
23 adverse outcome, Plaintiffs' representative contacted the GAMING COMMISSION. At that
24 time, a GAMING COMMISSION employee acknowledged that the Commissioner was
25 meeting with the "Review Board" and "had been for a couple of hours" and was unavailable;
26 the Plaintiffs' representative was contacted by the Commissioner immediately after the lunch
27 hour, he impliedly acknowledged that he had been meeting with the Board; stated that he
28 in fact had a result, and acknowledged that it could not yet been faxed to Plaintiffs'

1  representative as "we are not done typing it yet," but as soon as it was finished, he would
2  fax it to Plaintiffs' representative;

3        (T)    The Review Board's finding was that they would uphold the
4  Commissioner because of sloppy billing practices and the interference with the investigation
5  and on no other basis. Again, there was no citation to or indication of any right of the
6  Commissioner to create or impose the unknown or unspecified restrictions on the
7  investigation that allowed him to preclude any of the witnesses from speaking to their own
8  employer about the events.

## FIRST CLAIM

## VIEJAS IS INTENTIONALLY IN VIOLATION OF THE IGRA AND THE STATE COMPACT BY REFUSING TO PROVIDE OR APPLY DUE PROCESS TO CLAIMS AND PRESENTS A DANGER TO THE PUBLIC

21.     Paragraphs 1 through 20 are realleged and incorporated herein by reference.

22.     Defendants, and each of them, by engaging in the conduct described in Paragraphs 1 through 20 above, in the conduct of the gambling casino operations as hereinabove alleged, are clearly, unequivocally and as written under writings by the GAMING COMMISSION and its authorized representative operating without notice, fair hearing or the "due process" of the law. Further, by the very approved, adopted and GAMING COMMISSION promugated regulations, they do not provide nor include "due process" of law in violation of the IGRA and their own Tribal Ordinance and minimum standards of the Compact.

23.     By virtue of the same, in violation of the IGRA, and the public policy, which precludes and prevents Class III gaming without specific restrictions, guidelines and protections for the public, and because of the very nature of Class III gaming and its inherent and publically recognized availability and susceptibility to fraud, misuse, deception, abuse and the public's susceptibility to and predilection for gaming, and because of the inherent disadvantage between the individual provider, employee, and consumer members of the public and the gaming institution, the lack of "due process" and the clear statement that "due

process" is not available creates a clear and present danger to the public and those dealing with VIEJAS in gaming-related and connected matters. By reason of the foregoing, defendants, and each of them, have violated, continue to violate, and will continue to violate the mandated protections of the IGRA and the State Compact, which directly or indirectly, require "due process" and the protection of the public. Unless enjoined and ordered to cease and desist such activity, VIEJAS will continue to take advantage of, endanger and damage the public, members of the public and consumers, as well as those employed by and contracting with the gaming operations as identified hereinabove. Plaintiffs are acting and making this claim on behalf of the general public, and specifically for the protection of the general public, to avoid a clear and present danger to the thousands of people employed at VIEJAS and the hundreds of thousands of visiting, consuming, and gaming consumers coming on the premises, all of whom are referred to as the general public. As a result, Plaintiffs are entitled to be reimbursed and/or have their attorneys' fees paid under any appropriate State and Federal provisions, including but not limited to, action as a private attorney general for the enforcement of matters, protecting the public and creating a public good and preserving Plaintiffs and others' civil rights ("due process").

## SECOND CLAIM

## LIBEL AND SLANDER

24. Paragraphs 1 through 23 are realleged and incorporated herein by reference.

25. Within the last year, VIEJAS TRIBAL GOVERNMENT GAMING COMMISSION engaged in slander and libel and among other things, accused plaintiffs of fraud, theft and forgery. The same was disseminated in violation of the VIEJAS Tribal Ordinance to multiple persons.

26. The GAMING COMMISSION and the often proponent of that libel/slanderous communication subsequently, after obtaining the information and evidence he was required to obtain prior to issuing the same, apologized to Plaintiffs and to three of the recipients of said information, and acknowledged that the same were with withdrawn. Plaintiffs are not aware of any such apology or acknowledgment to other recipients.

27.     By reason of the same, Plaintiff CARCHEDI has been damaged in his person, in his reputation and his business has expended substantial sums and expenses, and suffered substantial losses and will continue to suffer losses as a result of said statements and the continuing communication of the same.

28.     The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiff. As a result of said actions, Plaintiff CARCHEDI is entitled to exemplary damages in an amount according to proof at the time of trial.

## THIRD CLAIM

## TRADE/LIBEL

29.     Paragraphs 1 through 28 are realleged and incorporated herein by reference.

30.     Plaintiff SDPVS, in late June and subsequently in or about late-July, was notified by the GAMING COMMISSION of claims and allegations that it was engaging in undesirable business practices, was unsuitable for licensing on Indian lands and jurisdiction, that it had engaged in falsification of documentation and knowingly and negligently failed to render services and over-billed. The foregoing was inaccurate and untrue. It was disseminated to multiple persons, and as result of the continued action of VIEJAS in sustaining those claims, the same has been communicated to multiple persons, parties and entities and significantly damaged the work, business and reputation of Plaintiff SDPVS.

31.     As a result of said improper and wrongful conduct, and the dissemination of said information to third-parties, SDPVS has expended sums and amount of damage to be proved at the time of trial.

33.     The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiffs. As a result of said actions, Plaintiffs are entitled to exemplary damages in an amount according to proof at the time of trial.

## FOURTH CLAIM

## INTERFERENCE WITH CONTRACT

34. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. The GAMING COMMISSION held itself out as a separate, independent and autonomous entity.

36. The GAMING COMMISSION intentionally undertook actions, tactics and conduct to interfere with the Plaintiffs' contract with CASINO MANAGEMENT. CASINO MANAGEMENT continued to utilize and continue to indicate it would honor its contracts and requests, and work with Plaintiffs, but for the acts, actions, accusations and activities and ultimate "determination" by the GAMING COMMISSION.

37. The Tribal Ordinance specifically identifies the issues which were brought before the Review Board and the only basis upon which to proceed, was alleged to have been the contract terminated with Plaintiff SDPVS. It was exclusively contractual in nature. As a result thereof, Plaintiffs demanded that the same be handled under the specific provisions of the Tribal Ordinance requiring separate, independent arbitration with a third-party. A third-party would have seen the lack of "due process" and applied appropriate legal protections. The demand was ignored and refused by the GAMING COMMISSION, by CASINO MANAGEMENT, and by the VIEJAS TRIBE. As a result thereof, the GAMING COMMISSION tortuously interfered with the ongoing contract and the agreed-upon renewal thereof, and Plaintiffs have been damaged in an amount to be proved at time of trial.

38. The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiffs. As a result of said actions, Plaintiffs are entitled to exemplary damages in an amount according to proof at the time of trial.

///

///

///

## FIFTH CLAIM

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

39. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

40. Plaintiffs had initiated and were proceeding with completion of negotiations for additional contractual services at other Indian casino locations. As a result of the wrongful actions of defendants, and the mandatory requirements of the IGRA, the "Final Determination" of defendants acted as a summary bar and prevention against Plaintiffs from contracting with or providing services at any other gambling, casino, or other Class III gaming Indian activity.

41. As a result of the wrongful accusations and termination, the wrongful revocation of the license, and the determination by the GAMING COMMISSION thereon, Plaintiffs have been precluded from contracting and working at other Indian casino locations.

42. The foregoing has resulted in economic losses to be proved at time of trial.

43. The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiffs. As a result of said actions, Plaintiffs are entitled to exemplary damages in an amount according to proof at the time of trial.

## SIXTH CLAIM

## CONSPIRACY TO HARM PLAINTIFFS IN THEIR BUSINESS AND REPUTATION

44. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45. Defendants and various agents thereof have separately agreed and/or tacitly agreed through conduct or lack thereof, and refusal to act, to harm Plaintiffs in their business, their reputation and their incomes.

46. The Plaintiffs have held themselves as separate, independent entities such that the CASINO MANAGEMENT did not control, influence or otherwise have any participation with the GAMING COMMISSION, which held itself out as aseparate independent entity which was not and could not be controlled by CASINO MANAGEMENT

14

Complaint

or the VIEJAS TRIBE in its conduct of its affairs, and in concert therewith, was independently constituted pursuant to the IGRA, and separate from the VIEJAS TRIBE. The VIEJAS TRIBE maintained that it was independent entity such that CASINO MANAGEMENT and the GAMING COMMISSION operated autonomously.

47. Those entities, in concert each with the other and specifically the VIEJAS TRIBE and CASINO MANAGEMENT in concert with the GAMING COMMISSION, refused to provide the rights, benefits, and protections of the Tribal Ordinance, refused to exercise the provisions that required independent arbitration and third-party review of the contract, and by omission and refusal to act, worked with the GAMING COMMISSION to force the Plaintiffs into the GAMING COMMISSION forum without "due process," without independent review and without the protections of law as mandated by the IGRA and the State Compact.

48. As a result thereof, Plaintiffs have suffered damage, loss and expenses in an amount according to proof at the time of trial.

49. The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiffs. As a result of said actions, Plaintiffs are entitled to exemplary damages in an amount according to proof at the time of trial.

## SEVENTH CLAIM

### VIOLATION OF CIVIL RIGHTS AND DUE PROCESS

50. Paragraphs 1 through 49 are realleged and incorporated herein by reference.

51. Defendants, and each of them, have intentionally violated the civil rights of Plaintiffs, refused them "due process," have taken away their rights and benefits, have wrongfully taken their property, wrongfully subjected them to interrogation and inquisition, refused them fair notice, and a fair opportunity to be heard, refused to provide them with statutorily (including Tribal Ordinance) provided protections, intentionally misrepresented the facts and circumstances to a "Review Board," interfered with a proper audit with the purpose and intent of falsifying information and misleading the Review Board, all with the

intent and purpose of protecting the GAMING COMMISSION and VIEJAS TRIBE and damaging and discrediting Plaintiffs.

52.   As a direct violation of their civil rights, Plaintiffs have suffered damages to be proven at the time of trial.

53.   The conduct of the defendants, and each of them, was knowing, intentional, wrongful, oppressive and despicable. The acts, actions and conduct of the defendants were taken knowingly and intentionally and in conscious disregard of the rights of Plaintiffs. As a result of said actions, Plaintiffs are entitled to exemplary damages in an amount according to proof at the time of trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

**First Cause of Action**

1.   For a declaration and order that VIEJAS BAND OF KUMEYAAY INDIANS; VIEJAS CASINO MANAGEMENT; and VIEJAS TRIBAL GAMING COMMISSION have failed to comply with the Indian Regulatory Gaming Act, have failed to provide the minimum protection under the law, whether State or Federal, of "due process," and ordering that defendants cease and desist from the provision of Class III gaming, gambling and casino operations;

2.   For attorneys' fees as private attorney general (CCP §1021.5), for the benefit and the protection of the public.

**Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action**

1.   For general and compensatory damages, including but not limited to pre-judgment interest in an amount according to proof at trial;

2.   For costs and reasonable expenses of suit;

///

///

///

///

3. For exemplary/punitive damages; and

4. For such other and further relief as the Court may deem just and proper.

DATED: June 21, 2004                     LAW OFFICES OF CHARLES D. NACHAND

BY: _____
CHARLES D. NACHAND
Attorney for Plaintiffs
SAN DIEGO PARKING AND VALET
SERVICES and ANTHONY CARCHEDI

---

17

Complaint

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

FOR ORIGINAL

JUN 21 2004

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SAN DIEGO PARKING AND VALET SERVICE, a Delaware LLC; and ANTHONY CARCHEDI,

(b) County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
VIEJAS BAND OF KUMEYAAY INDIANS; VIEJAS MANAGEMENT; VIEJAS TRIBAL Gaming Commission and Does 1 through 1 inclusive

County of Residence of First Listed **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)
Law offices of Charles D. Nachand
447 S. Escondido Blvd
Escondido CA 92025  (760)741-2665

Attorneys (If Known)
'04 CV 1265 JAH (RBB)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☒ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

~~USC Title 25 Chap @( Section 2710, et seq.~~  28:1331 ed   G.E.P.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ cease & desist $3,500,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE  June 21 2004
SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

104788   6/22/04   150 = JS

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

      (b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

      (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.     Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.